# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| NATIONAL MEDICAL IMAGING, L.L.C., | : | Bankruptcy No. 05-12714DWS |
| NATIONAL MEDICAL IMAGING HOLDING | : | |
| COMPANY, LLC, | : | |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY:  DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court is (1) Putative Debtors' Motion to Quash Subpoenas Issued Against Fairmount Partners and First Keystone Bank and to Issue Protective Orders ("Protection Motion") and (2) Motion of Putative Debtors for Order Compelling General Electric Capital Corporation ["GECC"] to Produce Documents ("Motion to Compel").  For the reasons which follow, the motions shall be granted in part and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 3, 2005, GECC, *inter alios*, filed involuntary Chapter 11 petitions (the "Involuntary Petitions") against related entities National Medical Imaging, LLC and National Medical Imaging Holding Co., LLC ("NMI" and "NMIHC," respectively,

and collectively "Putative Debtors") pursuant to 11 U.S.C. § 303.[1]  The parties have been

engaged in contentious discovery on the issue of whether the substantive requirements of

§ 303(b) and (h) are met with respect to the Involuntary Petitions, i.e., whether Debtors were

paying their debts as they came due prior to the filing of the Involuntary Petitions and

whether GECC is a proper petitioning creditor.  Indeed, the motions before me are but the

latest in what has become a nuclear war of discovery.  At the Court's suggestion, the  parties

have voluntarily narrowed the scope of their respective discovery requests and objections

thereto, leaving certain disputed issues which I now address.


## DISCUSSION

The scope of discovery is governed by Fed.R.Civ.P. 26,[2] which states in relevant part:

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to

the subject matter involved in the pending action."  Fed.R.Civ.P. 26(b)(1).  Relevancy is

"construed broadly to encompass any matter that bears on, or that reasonably could lead to

other matter that could bear on, any issue that is or may be in the case."  Oppenheimer Fund,

Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389 (1978).

<u>The Protection Motion</u>

Putative Debtors have filed the Protection Motion in response to subpoenas that

---

[1]  The two cases are being jointly administered.

[2]  Made applicable here by Fed. R. Bankr. P. 1018.

GECC issued to Fairmount Partners ("Fairmount" and the "Fairmount Subpoenas")[3] upon its belief that Fairmount is an investment banking firm to whom Putative Debtors provided financial information. The Fairmount Subpoenas seek production of two types of documents: (1) those provided to Fairmount by Putative Debtors and (2) those generated by Fairmount itself. See Put. Debtors' Reply Mem. at 3. Putative Debtors do not allege that the current scope of the Fairmount Subpoenas exceeds the broad definition of relevancy,[4] but rather they

_____

[3] It appears that the subpoenas GECC issued to Keystone Bank are no longer at issue. See Putative Debtors' Reply to [GECC]'s Further Response in Opposition to [Protection Motion] ("Put. Debtors' Reply Mem.") at 2 n.1 (discussing withdrawal of Putative Debtors' subsequent motion to quash as to other banking institutions).

[4] The categories of information sought by the Fairmount Subpoenas are:

> 1)  Schedule or other documentation provided to or generated by Fairmount Partners reflecting capital lease obligations by creditor, last payment made and status of each loan.

> 2)  Statement or other documentation of cash flow provided to or generated by Fairmount Partners indicating payment of capital lease obligations to GE, Marcap, DVI, US Bank, Medical Equipment Recovery and Citigroup for the period January 1, 2002 to July 5, 2005.

> 3)  The disclosure provided to or prepared by Fairmount Partners to be provided to investors as to the outstanding obligations owed to GE, Marcap, DVI, US Bank, Medical Equipment Recovery and Citigroup.

> 4)  Financial statements provided to/prepared by or used by Fairmount Partners as of December 31, 2002, 2003 and 2004 and the most current date in 2005.

> 5)  Schedule prepared by or given to Fairmount Partners, indicating use of proceeds of equity or sale proceeds.

> 6)  Accounts payable records and or schedule of vendors owed funds provided to or used by Fairmount Partners and the status of NMI et al's obligations as of the most recent date.

(continued...)

seek to limit the scope of the Fairmount Subpoenas to only those documents prepared by Debtors and provided to Fairmount.  They ask me to disallow the production of Fairmount-generated documents.

"A party seeking a protective order over discovery materials must demonstrate that 'good cause' exists for the protection of that material."  Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995).  Good cause is shown "by demonstrating a particular need for protection."  Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir.1986).  Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, will not satisfy the Rule 26(c) test.  Id.  While "good cause" may be satisfied by a showing that the material sought is irrelevant, the burden of showing irrelevancy is on the party resisting discovery.  E.g. McCurdy v. Wedgewood Capital Mgt., 1998 WL 961897, at *3  (E.D. Pa. Dec. 31, 1998).

While Putative Debtors make the unsubstantiated allegation that Fairmount-generated documents would be duplicative of documents already provided by Putative Debtors,[5] they fail to provide any specific examples as to how they would be harmed by production of

_____

(...continued)
            7)   Any prospectus or financial package prepared by Fairmount
            Partners to give to potential investors or buyers.

[GECC]'s Further Response in Opposition to Putative Debtors' Motion to Quash at 3 (Doc. No. 164) ("GECC's Further Response").

   [5] Putative Debtors attach an index which they allege "reveals that GECC is in possession of each document requested in the Fairmount Subpoena which was created by the Putative Debtors." Put. Debtor's Reply Mem. at 4 (emphasis added).  The documents at issue, however, are Fairmount-generated documents.  Putative Debtors have not explained how those documents, presumably containing some kind of analysis by Fairmount, would be duplicative.

Fairmount-generated documents. I note that the main concerns identified in the initial

Protection Motion were the confidential nature of the documents and the very broad scope of

the initial Fairmount Subpoenas at that time. These concerns, however, have been obviated

by the parties' agreement to treat the documents pursuant to confidentiality/protection

agreement already in place as well as GECC's significant narrowing of the subject matter of

the subpoenas. Putative Debtors fail to identify any harm stemming from the production of

documents subject to the <u>current</u> Fairmount Subpoenas, save for a premature concern that

GECC believes statements made by Fairmount are binding upon Putative Debtors.

Put. Debtors' Reply Mem. at 6-7. Needless to say, allowing GECC access to Fairmount-

generated documents is not a finding by the Court as to the admissibility or probative value

of the documents. As Putative Debtors fail to meet their burden of showing an identifiable

harm through the production of Fairmount-generated documents, the Protection Motion is

denied in this respect.

Putative Debtors also object to the temporal scope of the Fairmount Subpoenas, which

seeks financial statements and documentation of cash flow from January 1, 2002 to July 5,

2005. Putative Debtors correctly note that the relevant date of inquiry as to whether a

putative debtor is "generally not paying" debts as they become due is to be applied as of date

of filing of involuntary petition, <u>e.g.</u> <u>Bartmann v. Maverick Tube Corp.</u>, 853 F.2d 1540,

(10th Cir. 1988). GECC has failed to present any contrary argument, so I must agree that the

temporal scope of the Fairmount Subpoenas is excessive and unlikely to lead to information

bearing on whether Putative Debtors were generally paying their debts as of the Petition

Date. I find that good cause exists for limiting Fairmount's production of documents to those

produced to it by Putative Debtors or generated by Fairmount between January 1, 2004 to

the Petition Date, March 3, 2005;

Motion to Compel

The Motion to Compel seeks certain documents which Putative Debtors allege pertain

to GECC's subjective motives in filing the Involuntary Petitions.  Putative Debtors take the

position that, even assuming GECC can show that the substantive requirements of § 303(b)

and (h) are met, improper motivations or other "bad faith" on GECC's part would provide

an independent basis for dismissal of the Involuntary Petitions.  There appears to be some

divergent opinion on this issue.  Compare In re WLB-RSK Venture, 296 B.R. 509 (Bankr.

C.D. Cal. 2003) (finding that bad faith could provide basis for dismissal independent of

substantive requirements of § 303); In re Alexander, 2000 WL 33951465 (Bankr. D.

Vermont Aug. 29, 2000) (same)[6] with Kaplan v. Breslow (In re WLB-RSK Venture),

320 B.R. 221, 2004 WL 3119789 at *6 n. 13 (BAP 9th Cir. Nov. 24, 2004) (unpublished

table opinion affirming 296 B.R. 509 on another basis while rejecting bad faith as

independent basis for dismissal); In re Knoth, 168 B.R. 311, 315 (Bankr. D.S.C. 1994)

(motivations of petitioning creditors are irrelevant where the  substantive requirements of

---

[6] Alexander relies upon United States Optical, Inc. v. Corning Inc. (In re U.S. Optical, Inc.),
991 F.2d 792, 1993 WL 93931 (4th Cir. April 1, 1993) (unpublished decision), which noted that the
court was duty bound to conduct an inquiry, if requested, to determine whether an involuntary
petition has been filed in good faith.  U.S. Optical relies upon In re Winn, 49 B.R. 237 (Bankr. M.D.
Fla. 1985). Id. at *3.  Winn involved an involuntary petition that was in fact conceived by the debtor
with three creditors who acted as straw men creditors for the debtor by signing the petition.  I agree
that it is proper for a bankruptcy court "to inquire to what extent the debtor is involved in the
institution of an involuntary case," and not to wear blinders to such clear abuses of the bankruptcy
process by a debtor who cannot otherwise file its own voluntary case.  49 B.R. at 239.  This
collusive situation is clearly not before me and I question the reliance upon Winn by the Alexander
and U.S. Optical courts.

§ 303 are otherwise met unless the issue is whether to allow joinder of additional petitioning

creditors to cure a defective petition).  Neither party has attempted to reconcile the divergent

opinions,[7] and I conclude that there may be circumstances where the subjective motivations

of a petitioning creditor would warrant the dismissal of an involuntary case.  I need not,

however, identify the parameters at this discovery stage before any evidence that might be

relevant to dismissal on these grounds can be elicited.[8]  I will therefore find that GECC's

subjective motivations is a relevant subject of discovery and address the remaining objections

raised by GECC.

Putative Debtors have reduced the scope of the Motion to Compel to nineteen

documents that have been submitted by GECC to the Court for *in camera* review

---

[7] GECC, offered the opportunity to respond to the Motion to Compel, simply argues that the absence of a requirement of good faith in § 303(b) and (h) dictates that the defense of bad faith is not available.  To conclude otherwise, it contends is to rewrite the statute.  Moreover, the availability of relief under § 303(i) for damages for a bad faith filing requires that there first be a dismissal order. As for case law authority, it correctly observes that there is no binding case law authority in the Third Circuit so I am free to ignore the cases supporting Putative Debtors' position.

GECC fails to note that the dismissal of cases for bad faith is not expressly found anywhere in the statute but as the Third Circuit cases it cites evidence, dismissal for that reason has been sanctioned notwithstanding the statute's failure to identify bad faith as grounds.  I agree that the availability of damages requires first that there be a dismissal order.  However, that does not answer the question of whether bad faith can be a defense to an involuntary petition that otherwise meets the statutory requirements of § 303.

[8] The Court is mindful of Fed. R. Bankr. P. 1013(a) which requires the court to "determine the issues of a contested petition at the earliest practicable time and forthwith enter an order for relief, dismiss the petition, or enter any other appropriate order."  Accord  In re G.T.L. Corp., 211 B.R. 241, 247 (Bankr. N.D. Ohio 1997) (bankruptcy court has a duty to promptly adjudicate involuntary petitions); In re Kidwell, 158 B.R. 203, 212 (Bankr. E.D. Cal.1993) (noting that "time is of the essence" in determining whether there is a meritorious involuntary bankruptcy).  A side trip into this issue at the request of the Putative Debtors of necessity protracts adjudication of the contested petition.  Presumably they have weighed that fact and concluded that being subject to the control of the bankruptcy court does not outweigh their need to pursue this defense and not rely on GECC being unable to satisfy the statutory criteria.

(the "In Camera Submission") as Exhibits A-S (the "Disputed Documents").  GECC asserts that the Disputed Documents are protected from disclosure by the attorney-client privilege, and/or the work product doctrine.  See Privilege Log attached as Exhibit A to Supplement to [Motion to Compel] ("Debtors' Supp. to Compel").

It is well-established that the attorney-client privilege constricts the truth-finding process and is therefore to be construed narrowly, e.g. Westinghouse Electric Corp. v. Republic of the Phillippines, 951 F.2d 1414, 1423 (3d Cir. 1991).  The party asserting the privilege bears the burden of showing (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.  E.g., Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 862 (3d Cir. 1994), (citing In re Grand Jury Investigation, 599 F.2d 1224, 1233 (3d Cir. 1979)).  See also Greene, Tweed of Delaware, Inc. v. Dupont Dow Elastomers, LLC, 202 F.R.D. 418, (E.D. Pa. 2001).  As noted above, part of this burden is proving that the privilege has not been waived.

The work product doctrine is governed by Fed.R.Civ.P. 26(b)(3),[9] and protects documents and tangible things prepared "in anticipation of litigation or for trial" unless the party seeking production demonstrates "substantial need of the materials in the preparation of the party's case," and that they are "unable without undue hardship to obtain the substantial equivalent of the materials by other means."  E.g. United Coal Companies v. Powell Const. Co., 839 F.2d 958, 966 (3d Cir. 1988).

In determining whether a document was prepared "in anticipation of litigation," the appropriate inquiry is "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1258 (3d Cir. 1993).  There must be a "reasonable anticipation" of litigation, i.e., not merely a remote prospect or  inchoate possibility.  "Rather, a party must show that there existed 'an identifiable specific claim of impending litigation when the materials were prepared.'"  In re Gabapentin Patent Litigation,  214 F.R.D. 178, 183 (D. N.J. 2003); accord

---

[9]  Rule 26(b)(3), made applicable here by Fed.R.Bankr.P. 1018, states in relevant part:

. . . a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.  In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

In re Grand Jury Investigation, 599 F.2d 1224, 1229 (3d Cir. 1979); Schmidt, Long & Assoc., Inc. v. Aetna U.S. Healthcare, Inc., 2001 WL 605199, at *4 (E.D. Pa. 2001).  Moreover, the document must have been prepared for the prospect of litigation and no other purpose. 214 F.R.D. at 184.

If the party invoking the work product protection establishes these elements, the burden shifts to the party seeking production  to show substantial need for the protected material and an inability to get the equivalent information from another source. E.g. E.E.O.C. v. Guess?, Inc., 176 F.Supp. 2d 416, 423 (E.D. Pa. 2001).  Unlike the attorney-client privilege, the party invoking the work product doctrine does not bear the burden of proving non-waiver.  Greene, Tweed of Delaware, Inc., 202 F.R.D. at 423.

Finally, even where the party seeking production of documents and things prepared in anticipation of litigation meets its burden, the Court is nevertheless mandated to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation,"  Fed.R.Civ.P. 26(b)(3).

Putative Debtors correctly note that voluntary disclosure to one's adversary of documents protected by the attorney-client privilege or work-product doctrine will operate as a waiver of that protection with respect to documents relating to the same subject matter as the disclosed items.  See Thorn Emi North America, Inc. v. Micron Technology, Inc., 837 F.Supp. 616, (D. Del. 1993); Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 1993 WL 106429, at *3 ( E.D. Pa. 1993).  This rule is one of fairness.  "In order to protect against self-serving disclosure, a party who discloses protected documents waives the right to assert

-10-

work product or attorney-client productions for all documents dealing with the same subject matter." 1993 WL. 106429, at *3.[10]

Putative Debtors assert that GECC has voluntary disclosed privileged documents relating to GECC's subjective motives in filing the Involuntary Petitions and has therefore waived any claim of attorney-client privilege or work product protection for the Disputed Documents on this subject matter. Exhibits 1 and 5-9 to Debtors' Supp. to Compel (the "Waiver Documents").[11] I agree.

The Waiver Documents are internal GECC memos/reports which were clearly prepared in anticipation of litigation, i.e., GECC's subsequent filing of the Involuntary Petitions. The Waiver Documents also disclose at least some of GECC's subjective motivations in filing the Involuntary Petitions: (1) using involuntary bankruptcy as a method of collecting Putative Debtors outstanding obligations to GECC; (2) a way of dealing with what GECC perceived as Putative Debtors skill at conventional litigation; (3) possible

---

[10] However, I reject Putative Debtors' position that GECC has waived the attorney-client privilege and/or work product doctrine defense merely by virtue of filing the Involuntary Petition and therefore placing its good faith "at issue." Putative Debtors cite to Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 484 (S.D.N.Y. 1993), which simply holds that if the privilege holder puts attorney-client communication at issue by virtue of his claim or defense, that subject matter should be waived. GECC has not raised advice of counsel as a defense or a claim here. Moreover, every litigant in federal court places their good faith at issue with every document filed with the Court. See Fed.R.Civ.P. 11. The rule espoused by Putative Debtors would effectively eviscerate well-established protections.

[11] Exhibits 2-4 to Putative Debtors' Supp. were the subject of a protective motion filed by GECC. By Order dated August 16, 2005, I ordered that these inadvertently produced documents be returned to GECC. I therefore do not include them in determining whether GECC has waived the attorney-client privilege or the work product doctrine.

fraud by Putative Debtors which might warrant imposition of a bankruptcy trustee. Having disclosed some if its motives, GECC has waived protection under the work product doctrine as to any Disputed Documents that deal with the same subject matter.

In addition to being work product, Exhibit 1 of the Waiver Documents also appears to convey legal advice from outside counsel that is relevant to GECC's motives. Exhibit 1 at 2 (under the heading "Current Status"). Part of GECC's burden in proving the attorney-client privilege with respect to the Disputed Documents is demonstrating that it has not waived the privilege. GECC fails to address this document at all and therefore fails to meet its burden. Having produced Exhibit 1, GECC has also waived the attorney-client privilege with respect to Disputed Documents relating to its subjective motivations.

Relevant to GECC's waiver is the "joint defense" or "common interest" privilege (hereinafter the "common interest privilege"), which GECC has raised as to some of the Disputed Documents. The common interest privilege is not a separate protection, but rather enables litigants facing a common opponent to exchange otherwise privileged materials in order to adequately prepare a defense or prosecution without waiving the underlying privilege. Haines v. Liggett Group Inc., 975 F.2d 81, (3d Cir. 1992). GECC asserts that many of the Disputed Documents were created under a joint prosecution strategy with co-petitioning creditor Lyon Financial Services, Inc. d/b/a U.S. Bank Portfolio Services ("U.S. Bank") as memorialized in a written Joint Prosecution Agreement. Exhibits L and N (duplicate copies) to the In Camera Submission. Thus, documents created by U.S. Bank and its counsel, if otherwise privileged as attorney-client communication or work product, would

not lose that protection by their production to GECC and vice versa.  Moreover, documents subject to common interest privilege are also protected from GECC's waiver of the underlying attorney-client or work product protection through its disclosure of the Waiver Documents.  See John Morrell & Co. v. Local Union 304A, United Food and Commercial Workers, 913 F.2d 544, 556 (8th Cir. 1990) (protection "cannot be waived without the consent of all parties to the defense"); In re In-Store Advertising Securities Litigation, 163 F.R.D. 452, (S.D.N.Y. 1995) (same).

Unfortunately for GECC, not one of Disputed Documents comply with the explicit requirement of the Joint Prosecution Agreement:   documents exchanged under that agreement must be marked with (1) the providing party's name and (2) the words "Joint Prosecution Privilege."  Exhibits L and N to In Camera Submission at 2.  Despite GECC's assertion that certain documents were created or exchanged with U.S. Bank pursuant to this agreement, none of the Disputed Documents bear these required markings.[12]  Nor does GECC provide any facts from which I might determine that any Disputed Document was created or exchanged under the Joint Prosecution Agreement.[13]

---

[12]  As discussed below, there is one document (Exhibit K) that bears a hand-written notation "subject to Joint Prosecution Agreement."  I address it below.

[13]  GECC has followed what is unfortunately a common practice of invoking privileges without providing the necessary information for a privilege determination.  Rarely does the document itself provide all the information necessary for a court to make a privilege determination.  Indeed, Fed.R.Civ.P. 26(b)(5) specifically requires parties claiming privilege or work product protection to "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."  The skeletal descriptions
(continued...)

That said, I will not ignore the obvious fact that GECC and U.S. Bank had a common interest as petitioning creditors. Nor does the common interest privilege require a written joint strategy. Some of the Disputed Documents (albeit fewer than GECC would like) on their face evidence a joint strategy between GECC and U.S. Bank, regardless of the Joint Prosecution Agreement. I will accord any such document the protections of any underlying privilege notwithstanding GECC's own waiver.

After reviewing the Disputed Documents *in camera* along with GECC's descriptions and applying the above legal principles to the privileges claimed by GECC, I make the following findings of fact and conclusions of law.

Exhibit A is an attorney billing record. Billing records are subject to the attorney-client privilege to the extent that they reveal the nature of the services rendered.

---

(...continued)

found in GECC's privilege log (i.e., "e-mail correspondence re: litigation strategy," "memorandum regarding National Medical Imaging") do not comply with the rule. See In re Lomas Financial Corp., 1999 WL 33495524, at *5 (Bankr. D. Del. 1999) (privilege log should contain a brief description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the document was directed, or for whom the document was prepared, the purpose in preparing the document, the privilege or privileges asserted with respect to the document, and how each element of the privilege is met as to that document).

Aside from the privilege log and documents themselves, the only source of explanation is found in GECC's Further Response To the Motion to Compel. Statements in briefs generally do not constitute evidence unless admitted by the opposing party. Braden v. University of Pittsburgh, 477 F.2d 1, 6 (3d Cir.1973). Absent any objection by Putative Debtors as to the admissibility of GECC's assertions or evidence to the contrary, I will treat the document descriptions in the brief as a certification of counsel. That said, even certifications much be factually sufficient and uncontroverted by other evidence to support the claimed privilege. My findings below are based upon the record GECC has made in support of its burden of proving the applicability of the privileges it invoked.

-14-

Montgomery County v. MicroVote Corp., 175 F.3d 296, 304 (3d Cir. 1999).  Thus, the descriptions of the services in this document are privileged.  The remaining information (identity of attorney and hours spent) is irrelevant to the issue of GECC's subjective motivation.  It need not be produced.

Exhibit B is a cover letter between Michael G. Menkowitz ("Menkowitz") and GECC employee Joanne M. Harmon ("Harmon") that evidences nothing more than the existence of an attorney-client relationship between GECC and Fox Rothchild LLP.  It is therefore not a privileged communication.  See  Diversified Indus., Inc. V. Meredith, 572 F.2d 596, 603 (8th Cir. 1978); Cohen v. Uniroyal, Inc., 80 F.R.D. 480, 483 (E.D. Pa. 1978).  However, neither does it contain any information relevant to GECC's subjective motivations in filing the Involuntary Petitions.  It need not be produced.

Exhibit D,[14] is an e-mail from Menkowitz to GECC that merely forwards a link to the website of Fairmount Partners.  It does not disclose any confidential information for the purpose of seeking legal advice so as to support  the attorney-client privilege asserted by GECC.  Nor is there any indication that it was created in anticipation of litigation.  The relevancy of this document seems tenuous, but I cannot say it is unlikely to lead to information regarding GECC's subjective motivations.  It shall be produced.

Exhibits E and P are duplicate copies of  a series of GECC internal e-mails pertaining to the recommendation of Harmon to pursue litigation against Putative Debtors.  They are

---

[14]  GECC has provided Exhibit C  to Putative Debtors, so this exhibit is no longer at issue. GECC's Further Response at 3.

relevant to GECC's subjective motivations and the work product doctrine asserted by GECC has been waived by its disclosure of the Waiver Documents.  Nor is there any indicia that these e-mails were shared with U.S. Bank pursuant to a joint strategy.  This document shall be produced.

Exhibit F is a chart listing various suits against NMI in the Pennsylvania courts.[15] GECC concedes that it was prepared by counsel for U.S. Bank and not by GECC or its representative.  GECC's Further Resp. To Compel at 3-4.  As such, GECC cannot independently invoke attorney-client privilege or work product doctrine.  GECC's assertion that this chart was produced to it pursuant to the Joint Prosecution Agreement, is belied by the document's failure to bear the required designation.  Nor does GECC provide any facts for the Court to determine that it was prepared or given to GECC pursuant to a joint strategy with U.S. Bank.  It shall be produced.

Exhibits G and I are duplicate copies of an agenda for a meeting between GECC and U.S. Bank with respect to the filing of the Involuntary Petitions.  It is clear from the face of the document that it was prepared in anticipation of filing the Involuntary Petitions and pursuant to a joint strategy between GECC and U.S. Bank, whether or not such strategy is memorialized in the Joint Prosecution Agreement.  Thus, it is protected work product, and subject to the common interest doctrine is unaffected by GECC's disclosure of the Waiver Documents.  It need not be produced.

---

[15] Thus, it is relevant to one of the motivations enunciated in the Waiver Documents, i.e., NMI being a skilled litigant.  See Exhibit 1 to Putative Debtors' Supp. to Compel.

Exhibits H and J are duplicate copies of a chart prepared by GECC that lists various obligations of Putative Debtors.[16]  The document does not contain any information which infers that it was created in anticipation of litigation or that it is an attorney client communication.[17]  This document shall be produced.

Exhibit K is a memorandum which GECC concedes was prepared by U.S. Bank's counsel for U.S. Bank.[18]  GECC cannot invoke attorney-client privilege or work product absent applicability of the common interest doctrine.  While this document bears the handwritten notation "subject to Joint Prosecution Agreement," I find the notation suspect because:  (1) it is hand-written; (2) it does not comply with the exact designation required by the parties to the agreement; and (3) it is the only document that bears any marking referring to the Joint Prosecution Agreement, despite GECC's invocation to that agreement to several Disputed Documents.  Nor can I ascertain from the document itself that it was prepared pursuant to a joint litigation strategy between GECC and U.S. Bank.  As GECC has failed to provide any factual averments to support a claim of privilege, it shall be produced.

---

[16]  The amounts Putative Debtors owed to GECC is relevant to GECC's subjective motivation.  See Exhibit 1 to Putative Debtors' Supp. to Compel (memo discussing involuntary bankruptcy as a method of collecting outstanding debt).

[17]  Again, GECC's self-serving assertion that it prepared this document for distribution to U.S. Bank pursuant to the Joint Prosecution Agreement, is belied by the lack of the required party identification and designation "Joint Prosecution Materials."  While GECC also asserts that it prepared the document for distribution to its attorney, that alone is an insufficient factual basis for invocation of the attorney-client privilege.

[18]  The subject of the memo is an investigation by U.S. Bank's counsel of possible fraud by a principal of NMI and therefore relevant to GECC's subjective motivations.  See Waiver Documents, Exhibit 6 to Putative Debtors' Supp. to Compel (discussing possible fraud as a basis for appointing a trustee in an involuntary bankruptcy case).

Exhibits L and N are duplicate copies of the Joint Prosecution Agreement entered into by GECC and U.S. Bank. This document was clearly created in anticipation of litigation and pursuant to a joint strategy and is therefore protected work product unaffected by GECC's waiver under the common interest doctrine.

Exhibits M and O are duplicate copies of a document that GECC asserts was produced to it by its counsel. It evidences an implicit request for legal advice and contains legal analysis and advice by counsel. I find that it falls within the attorney-client privilege and does not fall within the scope of GECC's waiver, i.e., GECC's subjective motivations.

Exhibit Q is an e-mail from U.S. Bank to GECC scheduling a conference call or meeting. Nothing in the e-mail reflects that it was sent in anticipation of litigation, nor does it contain confidential communication between attorney and client. It shall be produced.

Exhibit R is an exchange of internal GECC e-mail communication, namely Harmon's request for documents in compliance with Putative Debtors document request and the response of several employees. It is not relevant to GECC's subjective motivation in filing the Involuntary Petition and need not be produced.

Exhibit S consists of two-emails from Mark Tambussi (Vice President, Regional Sales) to Harmon. Neither of these individuals has been identified as counsel for GECC so as to trigger the attorney-client privilege, nor is it trial preparation material. It is arguably relevant to GECC's subjective motivations,[19] and shall be produced.

_____

[19] The e-mail notes that GECC has received inquiries from outside imaging companies
(continued...)

<u>Additional Relief Requested</u>

After a hearing on the Motion to Compel, the Court requested the In Camera Submission and supplemental briefing in order to identify and address <u>all</u> the disputed documents at issue in the Motion to Compel.  Notwithstanding this directive, Putative Debtors' Additional Supplement to Motion of Putative Debtors for Order Compelling [GECC] to Produce Documents ("Putative Debtors Add. Supp. to Compel") raises for the first time a request as to documents which GECC produced in redacted form. Putative Debtors' Add. Supp. to Compel at 3.  These documents were not mentioned in the original Motion to Compel or as part of the In Camera Submission.  The purpose of supplemental briefing was to address the documents at issue in the Motion to Compel, not to submit additional items not framed by the parties to the Court as in dispute.  Moreover, Putative Debtors have failed to certify that the parties, after reasonable effort, are unable to resolve the dispute as to the redacted documents.  <u>See</u> Local Bankruptcy Rule 7026-1(a). I will deny this request without prejudice to Putative Debtors to bring an appropriate motion.

Putative Debtors also ask the Court to find that the attached Exhibit 10 to their supplement, produced to them by GECC, constitutes a waiver of the attorney-client and work product protections on the subject matter of whether there are any debts subject to a bona fide dispute.  <u>Id.</u> at 2.  Again, this request goes beyond the scope of the Motion to Compel, <u>i.e.</u>,

---

(...continued)

regarding NMI filing for bankruptcy and inquiring about available assets.  <u>See</u> Waiver Documents, Exhibit 6 to Putative Debtors' Supp. to Compel (discussing possible sale of assets through bankruptcy).

documents pertaining to GECC's subjective motivations.  In any case, none of the Disputed

Documents that I have held are protected pertain to this subject matter.

An Order consistent with this Memorandum Opinion shall issue.


_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

Dated:  October 31, 2005

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| NATIONAL MEDICAL IMAGING, L.L.C., | : Bankruptcy No. 05-12714DWS |
| NATIONAL MEDICAL IMAGING HOLDING | : |
| COMPANY, LLC, | : |
| | : |
| Debtor. | : |

# ORDER

**AND NOW**, this 31st day of October 2005, upon consideration of (1) Putative Debtors' Motion to Quash Subpoenas Issued Against Fairmount Partners and First Keystone Bank and to Issue Protective Orders ("Protection Motion") and (2) Motion of Putative Debtors for Order Compelling General Electric Capital Corporation ["GECC"] to Produce Documents ("Motion to Compel"), after notice and hearing, and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that:

1.     The Protection Motion is **GRANTED IN PART**.  The Fairmount Subpoenas are restricted to documents which relate to the time period January 1, 2004 to March 3, 2005.  In all other respects, the Protection Motion is **DENIED.**

2.     The Motion to Compel is **GRANTED IN PART** as follows:

(a) GECC shall produce to Putative Debtors copies of the documents  submitted *in camera* as Exhibits D-F, H, J, K, P, Q, and S;

(b) To the extent that Putative Debtors have requested additional relief in their supplemental memorandum as to certain redacted documents, this request is **DENIED** without prejudice;

(c) In all other respects, the Motion to Compel is **DENIED.**


_____
      DIANE WEISS SIGMUND
      Chief U.S. Bankruptcy Judge

<u>In re National Medical Imaging, L.L.C. - Bankruptcy No. 05-12714DWS</u>

<u>Copies to</u>:

Aris Karalis, Esquire
Ciardi, Maschmeyer & Karalis, PC
1900 Spruce Street
Philadelphia, PA  19103

Carol E. Momjian, Esquire
Senior Deputy Attorney General
21 South 12th Street, 3rd Floor
Philadelphia, PA  19107-3603

Dave P. Adams, Esquire
Office of the U.S. Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA  19107

Richard Welsh, Esquire
Commonwealth of PA
444 North 3rd Street, Suite 3B
Philadelphia, PA  19123

Michael Menkowitz, Esquire
Samuel H. Israel, Esquire
2000 Market Street, 10th Floor
Philadelphia, PA  19103-3291

Maury L. Rosenberg
National Medical Imaging, LLC
1919 Walnut Street
Philadelphia, PA  19103

Timothy A. Gallogly, Esquire
SIRLIN, GALLOGLY & LESSER, PC
1529 Walnut Street, Suite 600
Philadelphia, PA  19102

Jay Gottlieb, Esquire
BROWN RAYSMAN MILLSTEIN FELDER & STEINER , LLP
900 Third Avenue
New York, NY  10022

Francis J. Sullivan, Esquire
SULLIVAN & SULLIVAN
403 Executive Drive
Langhorne, PA  19047

Brian Grady, Esquire
GRADY & FALCIONE, LLP
1500 Sansom Street, 2nd Floor
Philadelphia, PA  19102

-3-